**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wiliam Richard Dickson,<br><br>    Plaintiff,<br><br>v.<br><br>Travelers Casualty Insurance Company of America,<br><br>    Defendant. | No. CV-23-01906-PHX-DJH<br><br>**ORDER** |

Defendant Travelers Casualty Insurance Company of America ("Defendant") has moved for partial summary judgment on (1) Plaintiff's claims for future knee and shoulder surgeries and for lost wages from February 3, 2022; (2) Plaintiff's claim for Bad Faith; and (3) Plaintiff's claim for punitive damages. (Doc. 56). Plaintiff did not respond to Defendant's Motion, so, Defendant filed a Motion for Summary Disposition. (Doc. 58). When the nonmoving party on a motion for summary judgment does not rebut the moving party's evidence, the district court treats those arguments as unopposed and takes its own look at the evidence to decide whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1] Taking its own look at the evidence in accordance with Rule 56(a), the Court will partially grant Defendant's Motion for Partial Summary Judgment.

---

[1] Defendant seeks "summary disposition" of its Motion for Partial Summary Judgment under L.R. Civ. 7.2(i), which states that if "counsel does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." The Court cannot summarily grant a motion for summary judgment, however. *See Leramo v. Premier Anesthesia Med. Grp.*, 2011 WL 2680837, at *8 (E.D. Cal. July 8, 2011). The Court must still determine whether summary judgment is appropriate and will therefore deny Defendant's Motion for Summary Disposition (Doc. 58).

I.  **Background**[2]

Plaintiff alleges in his Complaint that he was involved in a two-car-collision with non-party Timothy Schneider. (Doc. 1-2 at ¶ 18). Plaintiff states he incurred $151,182.00 of medical expenses due to this collision. (*Id*. at ¶ 19). Mr. Schneider's insurance gave Plaintiff the full $100,000.00 limit under his policy. (*Id*. at ¶ 20). Plaintiff alleges that he notified his insurance company, Defendant, of the underinsured claim, but that it failed to resolve his claim in good faith. (*Id*. at ¶¶ 21–25).

Due to this "bad faith conduct" Plaintiff sued Defendant in Arizona state court.[3] (*Id*. at 2). Plaintiff purports to bring the following causes of action against Defendant:

- breach of contract (*Id*. at ¶¶ 30–33);
- breach of the covenant of good faith and fair dealing (*Id*. at ¶¶ 34–36);
- declaratory judgment seeking a declaration that clarifies the "parties' rights and obligations" under the policy (*Id*. at ¶¶27–29).

Plaintiff seeks damages in the amount owed under the policy, plus contract damages, plus direct, consequential and exemplary damages for Defendant's bad faith. (*Id*. at 5). Defendant now seeks partial summary judgment on some of Plaintiff's claims. (Doc. 56).

II. **Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id*. At this stage of litigation, courts do not weigh evidence to discern the truth of the matter; they simply assess whether there is a genuine issue that warrants a trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). This standard "mirrors the standard for a

---

[2] The following facts are undisputed, unless stated otherwise.
[3] The Court terminated any unknown, unidentified parties after the Notice of Removal was filed. (Doc. 9).

1  directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge
2  must direct a verdict if, under the governing law, there can be but one reasonable
3  conclusion as to the verdict." *Anderson*, 477 U.S. at 250. "If reasonable minds could differ
4  as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250–51
5  (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)).

6        The moving party bears the initial burden of identifying portions of the record,
7  including pleadings, depositions, answers to interrogatories, admissions, and affidavits,
8  that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the
9  burden shifts to the nonmoving party, which must sufficiently establish the existence of a
10 genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*
11 *Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of
12 proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable
13 trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless,*
14 *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will
15 have the burden of proof, however, the movant can prevail "merely by pointing out that
16 there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*
17 *Corp.*, 477 U.S. at 323).

18       If the moving party meets its initial burden, the nonmoving party must set forth, by
19 affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine
20 issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). The nonmoving party
21 must make an affirmative showing on all matters placed in issue by the motion as to which
22 it has the burden of proof at trial. *Celotex*, 477 U.S. at 322. The summary-judgment stage
23 is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show
24 what evidence it has that would convince a trier of fact to accept its version of events."
25 *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024) (citation omitted).
26 In fact, the nonmoving party "must come forth with evidence from which a jury could
27 reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,
28 387 (9th Cir. 2010) (citation omitted). In judging evidence at the summary judgment stage,

the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

When a summary judgment motion is unopposed, the court must still "determine whether summary judgment is appropriate—that is, whether the moving party has shown [it is] entitled to judgment as a matter of law." *Leramo v. Premier Anesthesia Med. Grp.*, 2011 WL 2680837, at *8 (E.D. Cal. July 8, 2011), *aff'd*, 514 F. App'x 674 (9th Cir. 2013) (quoting *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990)). A district court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed[;] but, rather must consider the merits of the motion." *Id.* (quoting *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004)). A court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Pinder v. Emp. Dev. Dep't*, 227 F. Supp. 3d 1123, 1135–36 (E.D. Cal. 2017) (citation omitted).

### III.     Discussion

Defendant seeks partial summary judgment on (1) Plaintiff's claims for future knee and shoulder surgeries and for lost wages from February 3, 2022; (2) Plaintiff's claim for Bad Faith; and (3) Plaintiff's claim for punitive damages. (Doc. 56). The Court will address each of Defendant's arguments in turn.

### A.     Collateral Estoppel

Defendant first argues that the Court should grant summary judgment on Plaintiff's claims for future knee and shoulder surgeries and for lost wages because these damage claims are barred by issue preclusion, also known as collateral estoppel. (Doc. 56 at 12). Defendant specifically asserts that "Plaintiff's medical needs, including whether he required knee and shoulder surgeries for his MVA-related injuries, and his ability to work, including any restrictions, were actually litigated in the [workers compensation case] and essential to the ALJ's Decision." (*Id.* at 14).

Issue preclusion "prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Warden v. Magnus*, 2020 WL 1511091, at *4 (D. Ariz. Mar. 30, 2020) (quoting *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988)). "[A] federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law." *Cont'l Cas. Co. v. Platinum Training LLC*, 2021 WL 3491948, at *6 (D. Ariz. Aug. 9, 2021), *aff'd* 2025 WL 1937293 (9th Cir. July 15, 2025) (quoting *McInnes v. California*, 943 F.2d 1088, 1092–93 (9th Cir. 1991)). "[C]ollateral estoppel may apply to decisions of administrative agencies acting in a quasi-judicial capacity." *Torres v. Zurich Am. Ins. Co.*, 2024 WL 4817941, at *2 (D. Ariz. Sept. 16, 2024); *see also Miller v. Indus. Comm'n of Arizona*, 378 P.3d 434, 436 (Ariz. Ct. App. 2016) ("An ICA award has preclusive effect through application of principles of issue preclusion and claim preclusion.") (citations and internal quotations omitted)). "Unless the applicability of issue preclusion involves disputed questions of fact, its applicability is a question of law for [the Court] to determine independently." *Aguayo v. Indus. Comm'n*, 333 P.3d 31, 35 (App. 2014) (citation omitted).

In Arizona, "[c]ollateral estoppel, or issue preclusion, binds a party to a decision on an issue litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties." *Campbell v. SZL Properties, Ltd.*, 62 P.3d 966, 968 (Ariz. Ct. App. 2003) (quoting *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999)). "Depending on whether collateral estoppel is being invoked 'offensively' or 'defensively,' the last element regarding common identity of the parties may not be required." *Cont'l Cas. Co.*, 2021 WL 3491948, at *6 (citation omitted). "Offensive use of collateral estoppel occurs when a plaintiff seeks to prevent the defendant from relitigating an issue the defendant previously litigated unsuccessfully in an action with another party; defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim" the plaintiff

previously litigated. *Parklane Hosiery Co.*, 439 U.S. at 326 n. 4. If the first four elements of collateral estoppel are present, Arizona permits defensive, but not offensive use of the doctrine. *Standage Ventures, Inc. v. State*, 562 P.2d 360, 364 (Ariz. 1977).

The Court notes that Collateral Estoppel is an affirmative defense which must be raised in a defendant's Rule 12(b) motion or answer, or it is waived, subject to few exceptions. *See Kaisha v. Dodson*, 423 B.R. 888, 902 (N.D. Cal. 2010) ("Res judicata and collateral estoppel are affirmative defenses that must be pleaded.") (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 476 (1998)); *see also Day v. McDonough*, 547 U.S. 198, 207-08 (2006) (noting that a defendant can waive its right to assert an affirmative defense.). Before moving to the merits of this argument, the Court must determine whether Defendant has preserved the defense of issue preclusion.

### 1. Preservation

A "waiver" is the "intentional relinquishment or abandonment of a known right." *Wood v. Milyard*, 566 U.S. 463, 474 (2012) (citations and internal quotation marks omitted). Generally, an affirmative defense that is not asserted in an answer to the complaint is waived or forfeited by the defendant. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008) (citing Fed. R. Civ. P. 8(c)(1), 12(b), 15(a)). "In the absence of a showing of prejudice, however, affirmative defenses may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *see also Control Laser Corp. v. Smith*, 705 F. Supp. 3d 1006, 1017 (N.D. Cal. 2023) (noting same). The Ninth Circuit has held that "[t]here is no prejudice to a plaintiff where an 'affirmative defense would have been dispositive' if asserted 'when the action was filed.' " *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

In its Answer, Defendant pled: "[Defendant] Travelers alleges that, by virtue of Plaintiff's own acts and conduct, Plaintiff waived its rights and/or is ***estopped*** from asserting its claims." (Doc. 9 at ¶ 13). This assertion may not sufficiently state an affirmative defense for issue preclusion, Fed. R. Civ. P 8(c)(1); even so, the Court finds

that there is no prejudice to allowing this defense to be raised for the first time on summary judgment. *See Camarillo*, 998 F.2d at 639. Defendant seeks to preclude allegations of damages that were litigated in a previous worker's compensation matter. (Doc. 56 at 12–14).

Even if Plaintiff had argued that there was prejudice here, which he has not, the Court would be hard pressed to find any showing of prejudice related to this defense because it would have been dispositive if asserted when the action was filed. *See Garcia v*, 918 F.3d at 1008. Furthermore, since Plaintiff has not argued that he would be prejudiced by Defendant's assertion of collateral estoppel at this stage, or even responded at all, he has waived his ability to challenge the preservation of Defendant's affirmative defense. *See E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1068 (E.D. Cal. 2010) (finding that the defendant had not waived the affirmative defense of laches because Plaintiff made no argument that it was prejudiced).

### 2. Merits

Next, the Court will address the merits of Defendant's collateral estoppel argument. It finds that all of the elements of defensive collateral estoppel are established here, as detailed below. *See Cont'l Cas. Co. v. Platinum Training LLC*, 2021 WL 3491948, at *6 (D. Ariz. Aug. 9, 2021), *aff'd sub nom*. 2025 WL 1937293 (9th Cir. 2025) (noting the required issue preclusion factors).

### i. Actually Litigated

First, the issue of Plaintiff's claims for damages regarding future knee and shoulder surgeries and for lost wages were actually litigated in the Worker's Compensation ("WC") case. An issue is "actually litigated" under Arizona law where the issue is "properly raised, by pleadings or otherwise, was submitted for determination, and was determined." *In re Child*, 486 B.R. 168, 173 (B.A.P. 9th Cir. 2013) (citing *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (1986)).

Plaintiff filed a claim for workers compensation benefits and requested a hearing before the Industrial Commission of Arizona ("ICA"). (Doc. 56-8 at 6). A hearing was

held before an Administrative Law Judge ("ALJ") regarding Plaintiff's "medical condition." (*Id.*) Plaintiff's deposition was taken, his medical records were obtained and he was given an independent medical examination ("IME") by Dr. David Ott at OrthoArizona. (Doc. 56 at 9; Doc. 56-8 at 95). Plaintiff's treating physician, Dr. Michael Steingart, and Dr. Ott testified at a hearing in front of the ALJ. (*Id.* at 94–95). Based on this testimony, and the evidence in the record, the ALJ found that Plaintiff's "condition related to the industrial injury was medically stationary as of February 3, 2022, without permanent impairment, *without work restrictions* and no need for supportive care." (*Id.* at 96) (emphasis added). The ALJ specifically noted that "the medical records do not demonstrate that the applicant had any temporary aggravation of his knee condition" and that "with regard to the applicant's shoulders, the applicant does not need any further treatment related to the subject industrial injury." (*Id.*) Thus, Plaintiff's future knee and shoulder surgeries and lost wages were actually litigated before the ICA because they were raised by Plaintiff's WC claim, submitted to the ICA for determination, and determination was made by the ALJ. (*See* Doc. 56-8 at 94–96); *see also Chaney*, 716 P.2d at 30.

### ii. Full and Fair Opportunity to Litigate

Second, parties had a full and fair opportunity and motive to litigate the issues. Issue preclusion does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue . . . 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.' " *State v. Walker*, 768 P.2d 668, 671 (Ariz. Ct. App. 1989) (quoting *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480–81 (1982)).

Here, the parties had a full and fair opportunity to litigate the issues of Plaintiff's injuries and lost wages. Plaintiff sought benefits for his "medical treatment and temporary compensation" related to his "medical condition." (Doc. 56-8 at 6). Depositions and an IME were conducted, records were submitted and witnesses testified before the ALJ— including Plaintiff himself. (*Id.* at 50, 92–96). The ALJ issued its decision, and Plaintiff did not request further appellate review. (*Id.* at 96; Doc. 56-7 at 12). Plaintiff therefore

had a full and fair opportunity to litigate his alleged injuries and lost wages in front of the ALJ as there is no reason to doubt the fairness of the ICA proceedings. *See Walker*, 768 P.2d at 671; *see also Torres*, 2024 WL 4817941, at *2 (finding that the Plaintiff had a full and fair opportunity to the litigate the issues in its proceeding before the ICA where Plaintiff did not appeal the ALJ's decision).

### iii.     Final Decision on the Merits

Third, a valid and final decision on the merits was entered. "[A] final judgment is any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Medley v. State*, 2014 WL 5494921, at *5 (Ariz. Ct. App. Oct. 30, 2014). "[T]o be given preclusive effect, a judgment must be a firm and stable one, the 'last word' of the rendering court—a 'final' judgment as opposed to one that is considered merely tentative in the very action in which it was rendered." *Elia v. Pifer*, 977 P.2d 796, 803 (Ariz. Ct. App. 1998) (internal citations omitted).

The ALJ held a hearing and issued a "Decision Upon Hearing and Findings and Award." (Doc. 56-8 at 92). The ALJ made findings of fact and conclusions of law, and based on this, issued Plaintiff an award. (*Id.* at 96). This award included "[m]edical, surgical and hospital benefits, as provided by law, from July 21, 2021[,] through February 3, 2022" as well as "[t]emporary total or temporary partial disability compensation benefits, as provided by law, from July 21, 2021 and February 3, 2022." (*Id.*) The ALJ noted that "[a]ny party dissatisfied with this Award may file a written request for review" by December 10, 2022. (*Id.* at 97). Plaintiff did not appeal the ALJ's decision (Doc. 56-7 at 12), so, the decision is "sufficiently firm to be accorded conclusive effect." *Medley*, 2014 WL 5494921, at *5; *see also Guertin v. Pinal County*, 875 P. 2d 843, 845 (Ariz. Ct. App. 1994) (explaining that the findings of an administrative agency become final and binding when the time for appeal has passed without a party pursuing its right of appeal).

### iv.     The Issue was Essential to the Decision

Fourth, and finally, the resolution of Plaintiff's future knee and shoulder surgeries and for lost wages was essential to the decision. "Whether a ruling is essential must be

- 9 -

determined on a case-by-case basis." *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999). Plaintiff filed a claim with the ICA alleging that he was "entitled to active medical treatment and temporary compensation" related to his "medical condition." (Doc. 56-8 at 6). At the hearing, Plaintiff indicated that he had suffered injuries to his knee and shoulder resulting from a work-related accident he was in. (Doc. 56-8 at 93). He explained that, after the accident, his shoulder pain was limiting his driving and that he was told he would need a knee replacement and be in a "no work status." (*Id*. at 94). The ALJ was specifically asked to decide whether these issues entitled him to benefits, so, the issues of Plaintiff's knee and shoulder surgeries and lost wages were essential to the ALJ's decision. (*See id*. at 92–96); *see also Garcia*, 990 P.2d at 1073.

### 3. Conclusion

In sum, Defendant is entitled to the defensive use of collateral estoppel as to Plaintiff's claims for future knee and shoulder surgeries and for lost wages. *Standage Ventures*, 562 P.2d at 364. However, because Plaintiff alleges that Defendant breached the Policy between the parties by not paying property damages, and that this breach caused consequential damages, Plaintiff's breach of contract claim survives. (Doc. 1-2 at ¶¶ 17–18, 31–33).

### B. Bad Faith

Defendant argues that Plaintiff cannot show Defendant "knowingly lacked a reasonable basis for (as alleged) failing to pay the value of Plaintiff's UIM claim, failing to make a reasonable offer to settle the UIM claim, and/or failing to timely and reasonably investigate and process the UIM claim." (Doc. 56 at 15 (citing *Nardelli v. Metro. Group Prop. & Cas. Ins. Co*., 277 P. 3d 789, 795 (Ariz. Ct. App. 2012) (An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes a claim (an objective test) and either knows that it is acting unreasonably or acts with such reckless disregard that such knowledge may be imputed to it (a subjective test)). The Court will grant summary judgment in Defendant's favor on Plaintiff's claim for breach of the covenant of good faith and fair dealing (Doc. 1 at ¶¶ 34–36)

Arizona law recognizes "an implied duty of good faith and fair dealing in every insurance contract." *McGhee v. Sedgwick Claims Mgmt. Servs. Inc*., 2019 WL 1598032, at *2 (D. Ariz. Apr. 15, 2019) (citing *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)). This duty "arises by virtue of the contractual relationship, but the breach of the duty sounds in tort." *Id*. (citing *Walter v. F.J. Simmons and Others*, 818 P.2d 214, 236 (Ariz. Ct. App. 1991)). Arizona law also recognizes that "a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bivins v. Pharm. Rsch. Assocs. Inc*., 2025 WL 1640360, at *5 (D. Ariz. June 10, 2025) (citation omitted). However, the sole remedy available for plaintiffs under Arizona law is for breach of the contract, not breach of contract coupled with the breach of good faith and fair dealing. *Id*. (citing *Aspect Sys., Inc. v. Lam Research Corp*., 2006 WL 2683642, *3 (D. Ariz. 2006)) (holding that a breach of a contractual term does not support a claim for breach of the covenant of good faith and fair dealing).

Reviewing Plaintiff's Complaint, it appears his claim for breach of the covenant of good faith and fair dealing is premised on Defendant's alleged failure to pay his UIM claim without a reasonable basis, i.e., his breach of contract claim. (*Compare* Doc. 1-2 at ¶ 35 *with* ¶ 33). Because Plaintiff's breach of the covenant of good faith and fair dealing is premised on his breach of contract claim, this claim cannot survive summary judgment. *See Aspect Sys., Inc*., 2006 WL 2683642, *3.

### C. Punitive Damages

Defendant finally argues that Plaintiff must, but cannot, establish Defendant possessed an "evil mind" by clear and convincing evidence. (Doc. 56 at 6 (quoting *Linthicum v. Nationwide Life Ins. Co*., 723 P. 2d 675, 681 (Ariz. 1986)). The Court agrees.

"To recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil

mind[.]' " *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 907 P.2d 506, 518 (Ariz. Ct. App. 1995) (citations omitted). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, 'consciously disregarding the unjustifiable substantial risk of significant harm to them.' " *Id*. (citing *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986); *Gurule v. Illinois Mut. Life & Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987)). "Of course, the required evil mind may be established by defendant's express statements or inferred from defendant's expressions, conduct, or objectives." *Gurule*, 734 P.2d at 87.

"The question of whether punitive damages are justified should be left to the jury if there is any reasonable evidence which will support them. The evidence, however, must be more than slight and inconclusive such as to border on conjecture." *Farr v. Transamerica Occidental Life Ins. Co. of California*, 699 P.2d 376, 384 (Ariz. Ct. App. 1984). A motion for summary judgment "on the issue of punitive damages must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 832 P.2d 203, 211 (Ariz. 1992). "Conversely, the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence." *Id*.

Here, Plaintiff alleged, under his breach of the covenant of good faith and fair dealing claim, that Defendant's conduct "consciously disregarded a substantial risk of harm to [Plaintiff]." (Doc. 1-2 at ¶ 40). Defendant interprets this as a claim for punitive damages. (Doc. 56 at 3). Plaintiff did not respond to Defendant's Motion so the Court is unsure of Plaintiff's position. However, there is no evidence or even allegations that Defendant possessed an evil mind. (*See* Doc. 1-2). The only allegation to support this purported claim is that Defendant "consciously disregarded a substantial risk of harm to [Plaintiff]." (Doc. 1-2 at ¶ 40). Standing alone, without supporting evidence, no reasonable jury could find the requisite evil mind by clear and convincing evidence. *Thompson*, 832 P.2d at 211. Because Defendant has shown its entitled to judgment as a matter of law, the Court will grant summary judgment in Defendant's favor on Plaintiff's punitive damages

claim. *Leramo*, 2011 WL 2680837, at *8.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 56) is **GRANTED**. Plaintiff's Count III for Breach of the Covenant of Good Faith and Fair Dealing as well as Plaintiff's claim for punitive damages are **DISMISSED**. Plaintiff is **estopped** from asserting any claim related to his future knee and shoulder surgeries or for lost wages from July 21, 2021, to February 3, 2022. Only Plaintiff's Count I for Declaratory Judgment and Count II for Breach of Contract shall remain.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Disposition (Doc. 58) is **DENIED**.

**IT IS FINALLY ORDERED** that in light of Plaintiff's remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 14 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 21st day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge